IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CHARLES MOA,<br><br>Defendant. | MEMORANDUM DECISION AND ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS AND REQUEST FOR A FRANK'S HEARING<br><br><br>Case No. 2:24-CR-154-TS<br><br>District Judge Ted Stewart |

This matter is before the Court on Defendant Charles Moa's Motion to Suppress or, in the Alternative, a Franks Hearing.[1] For the reasons discussed below, the Court will deny the Motion.

## I.  BACKGROUND

A one-count Indictment was filed against Defendant on May 1, 2024, for Felon in Possession of a Firearm and Ammunition in violation of 18 U.S.C. § 922(g)(1).[2] Defendant seeks to suppress evidence discovered as a result of a search warrant, which he argues was invalid under the Fourth Amendment. Defendant requests that the Court schedule an evidentiary hearing on his motion to suppress, or in the alternative, a *Franks* hearing.

The search warrant at issue was issued by the Third District Court of Utah following submission of an Affidavit for Search Warrant (the "Affidavit") by Detective Nicholas Telles.[3] Detective Telles asserted the following in the Affidavit. On July 12, 2023, a gold Cadillac

---

[1] Docket Nos. 55, 56.

[2] Docket No. 1.

[3] Docket No. 56, Exhibit A.

Deville with license plate number 0R6UL, fled from West Valley Police. The driver of the vehicle was described as a tall, dark-skinned male. Shortly after this incident occurred, a "long time, trusted and reliable confidential informant"[4] informed Detective Telles that Defendant was driving a gold Cadillac Deville with no license plate, that he was armed with a handgun, using narcotics, and "acting violent and reckless."[5] Defendant's height is six feet and seven inches and he has dark skin, matching the description provided by West Valley Police of the man who fled in the gold Cadillac.

In mid-September 2023, Detective Scott, another detective on Detective Telles' squad, spotted a gold Cadillac Deville on the road and attempted to initiate a stop. Again, the vehicle sped away recklessly and was not followed. Detective Scott described the driver as a tall, dark-skinned male.

Approximately a week and half later, Detective Telles attempted to stop a gold Cadillac Deville with no license plate near the location Detective Scott spotted it. The vehicle again sped away recklessly and Detective Telles did not pursue it. However, approximately one hour later, he located the same vehicle after it had been parked. Detective Scott arrived on scene and confirmed it was the same vehicle that had fled from him earlier in the month. Further, Detective Telles asserted that he checked the VIN number of the car and confirmed it was the same vehicle that fled from West Valley Police on July 12, 2023. Detective Telles then applied for and was granted a GPS tracker warrant for the vehicle. The GPS tracker was attached to the vehicle.

---

[4] *Id.* at 2.

[5] *Id.*

Several days later, on September 28, 2023, Detective Telles monitored the tracker and followed it to an apartment complex. Detective Telles observed Defendant exit the Cadillac and walk into an apartment. Defendant carried a black backpack from the vehicle into the apartment. An officer in a law enforcement helicopter on scene then observed Defendant run out of the back door of the apartment and jump a fence. He was not wearing the backpack as he ran from the apartment. He was pursued by multiple law enforcement officers and was eventually apprehended. Officers then secured the apartment in anticipation of the search warrant.

Detective Telles asserted that Defendant is a documented member of the Tongan Crip Gang and, based on Detective Telles' six years of being a gang detective, he understands such gang members to often commit crimes related to firearms and narcotics. He further asserted that Defendant was on parole for felony discharge of a firearm, felony failure to stop, and aggravated assault. Finally, Detective Telles asserted that, based on Defendant's criminal history, the information received from the confidential informant, and Defendant leaving the backpack when fleeing, he believed it was likely illegal items related to weapons would be found in the apartment. Based upon these representations, a search warrant was issued.

Upon execution of the search warrant, officers located a black backpack in a basement utility closet. Inside the backpack was a firearm. Defendant argues that, because the warrant was not supported by probable cause, the firearm evidence should be suppressed.

## II.  DISCUSSION

### a.  Request for Hearing

Defendant argues that "[a]n evidentiary hearing is needed to compel the Federal Government to produce the confidential informant affiant since there is a reasonable probability

that his testimony is necessary to find a lack of probable cause."[6] However, Defendant further asserts that "the question before this Court is whether under the totality of the circumstances *presented in the affidavit*, the magistrate judge had a substantial basis for determining that probable cause existed."[7]

Defendant's arguments for suppression appear limited to the sufficiency of the affidavit in support of the search warrant. Therefore, the Court's inquiry, as explained in Defendant's memorandum, is limited to the circumstances set forth in the affidavit. Defendant's memorandum does not explain why an evidentiary hearing is necessary or how an evidentiary hearing would assist the Court in assessing the facial validity of the search warrant. Testimony from the government's confidential informant that was not included in the Affidavit is irrelevant to determining whether the circumstances *set forth in the affidavit* provided a substantial basis for the issuing judge to find there was probable cause that evidence of a crime would be found in the searched apartment. Accordingly, the Court finds an evidentiary hearing would serve no use in making the necessary determination and will deny Defendant's request for an evidentiary hearing.

b. *Franks Hearing*

Defendant requests that, if the Court finds an evidentiary hearing is not appropriate, the Court hold a *Franks*[8] hearing instead. "Under *Franks*, a Fourth Amendment violation occurs if '(1) an officer's affidavit supporting a search warrant application contains a reckless

---

[6] Docket No. 56, at 4.

[7] *Id.* at 5 (internal quotation marks and citation omitted).

[8] *See Franks v. Delaware*, 438 U.S. 154 (1978).

misstatement or omission that (2) is material because, but for it, the warrant could not have lawfully issued.'"[9] "If a defendant makes a 'substantial preliminary showing' of both [recklessness and materiality], he is entitled to an evidentiary hearing."[10]

> Such a substantial preliminary showing requires more than mere allegations of defects in a warrant. A defendant must produce evidence of the complained-of defects by offering affidavits or sworn or otherwise reliable statements of witnesses. If the defendant cannot produce such evidence, he must explain why he cannot do so.[11]

Regarding recklessness, Defendant asserts that Detective Telles' recklessly omitted from the Affidavit the timeline of when he received the information regarding Defendant from the confidential informant in relation to the date the Affidavit was submitted. Defendant asserts that Detective Telles made this omission "in an effort to make it appear that the information was received around the time he applied for the warrant," when it was actually received six weeks prior.[12]

Defendant focuses on one paragraph of the Affidavit that states Detective Telles received confidential informant's information "previously" without specification. However, Defendant fails to recognize that, in a subsequent paragraph of the Affidavit, Detective Telles specifies that the confidential informant provided Detective Telles with the information regarding Defendant "shortly after" the July 12, 2023 incident, when the gold Cadillac sped away from West Valley

---

[9] *United States v. Moses*, 965 F.3d 1106, 1110 (10th Cir. 2020) (quoting *United States v. Herrera*, 782 F.3d 571, 573 (10th Cir. 2015)).

[10] *Id.* (quoting *Franks*, 438 U.S. at 155).

[11] *Id.* (internal quotation marks and citation omitted).

[12] Docket No. 56, at 13.

Police.[13] Therefore, the omission of which Defendant complains is nonexistent and cannot support a *Franks* hearing, even in the unlikely event the Court were to find such omission to be reckless or material.

Next, Defendant asserts that "the affidavit omits whether [Defendant] was operating the vehicle or whether he was just a passenger and how and/or when the informant saw [Defendant] possessing a gun."[14] Defendant provides no additional context, argument, or evidence to support that these purported omissions were made recklessly. As to the materiality of such omissions, Defendant asserts only generally that "without it there is not probable cause to search for any firearm or narcotics."[15] These general and unsupported assertions fall far short of the requisite "substantial preliminary showing" described above. Accordingly, the Court finds Defendant has failed to show he is entitled to a *Franks* hearing.

   c.  *Motion to Suppress*

Having found neither an evidentiary nor a *Franks* hearing is justified, the Court will next analyze the Motion to Suppress based on the information contained in the Affidavit. Under the Fourth Amendment, "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."[16] The Supreme Court has interpreted this language to require only three things:

> First, warrants must be issued by neutral, disinterested magistrates. Second, those seeking the warrant must demonstrate to the magistrate their probable cause to believe that the evidence sought will aid in a particular apprehension or conviction

---

[13] Docket No. 56, Exhibit A, at 2–3.

[14] Docket No. 56, at 13.

[15] *Id.*

[16] U.S. CONST. amend IV.

for a particular offense. Finally, warrants must particularly describe the things to be seized as well as the place to be searched.[17]

At issue here is whether the warrant was supported by probable cause. "An affidavit establishes probable cause for a search warrant if the totality of the information it contains establishes the fair probability that contraband or evidence of a crime will be found in a particular place."[18] In making this assessment, "a magistrate's task is to make a 'practical, common-sense decision' based on the totality of the circumstances as set forth in the affidavit."[19] In cases where statements from an informant are the basis of the affidavit, "veracity, reliability, and basis of knowledge are 'highly relevant' as to whether a tip can support probable cause."[20] "Reviewing courts should give the magistrate's ultimate probable cause decision great deference. Nevertheless, [courts should] not defer to the magistrate's determination if the affidavit does not provide a substantial basis for concluding that probable cause existed."[21]

Defendant argues that the allegations included in the Affidavit failed to provide probable cause because "the officers used the information from the confidential informant as their only

---

[17] *Dalia v. United States,* 441 U.S. 238, 255 (1979) (internal quotation marks and citations omitted).

[18] *United States v. Roach,* 582 F.3d 1192, 1200 (10th Cir. 2009) (internal quotation marks and citation omitted).

[19] *United States v. Rowland,* 145 F.3d 1194, 1204 (10th Cir. 1998) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).

[20] *United States v. Quezada-Enriquez*, 567 F.3d 1228, 1233 (10th Cir. 2009) (quoting *Gates*, 462 U.S. at 230).

[21] *Rowland*, 145 F.3d at 1204 (internal quotation marks and citations omitted).

basis of probable cause to obtain their search warrant," and the information provided by the confidential informant lacked sufficient veracity and reliability to support probable cause.[22]

"Veracity concerns whether there is reason to believe that the informant is telling the truth, including whether he faces criminal charges or whether his statement is against his own penal interest."[23] However, if "there is sufficient independent corroboration of an informant's information, there is no need to establish the veracity of the informant."[24] In assessing reliability, courts consider "whether the informant has provided accurate information in the past."[25] "As for basis of knowledge, a firsthand observation is entitled to greater weight than secondhand information."[26] If, as here, "the informant's basis of knowledge is not described on the face of the affidavit, [courts] look . . . for the kind of highly specific or personal details from which one could reasonably infer that the informant had firsthand knowledge about the claimed criminal activity."[27] An insufficient showing of any of these elements is not fatal to the warrant as veracity, reliability, and basis of knowledge "are not absolute, independent requirements."[28]

---

[22] Docket No. 56, at 9.

[23] *Quezada-Enriquez*, 567 F.3d at 1233 (citations omitted).

[24] *United States v. Danhauer,* 229 F.3d 1002, 1006 (10th Cir. 2000).

[25] *Quezada-Enriquez*, 567 F.3d at 1233.

[26] *Id.*

[27] *Id.* (internal quotation marks and citations omitted).

[28] *Id.* ("These factors are not absolute, independent requirements that must be satisfied in order for probable cause to exist; rather, we evaluate whether these factors as revealed by the facts in the affidavit create a fair probability that contraband or evidence of a crime will be found in a particular place on consideration of the totality of circumstances.") (internal quotation marks and citation omitted).

Defendant argues that the Affidavit fails to provide specific facts to support the veracity of the confidential informant's statement that Defendant was armed, using narcotics, and acting violent and reckless. He further alleges that the Affidavit fails to provide specific facts supporting the confidential informant's reliability, aside from asserting generally that he has previously been reliable. Finally, Defendant asserts that there was insufficient corroboration, as there was not independent investigation regarding whether Defendant had a handgun.

In opposition, the government argues that the confidential informant "provided law enforcement with detailed information about [Defendant] including that he was 'armed with a handgun.'"[29] It further asserts that the information provided was largely corroborated by, for example, independent information that someone fitting Defendant's description was driving the gold Cadillac Deville and was acting recklessly by fleeing from law enforcement at high speeds and jumping fences. The government asserts that this information, in connection with the assertions that Defendant "ditched a backpack" in an apartment before evading law enforcement, that he continually fled from law enforcement, and his criminal history and gang involvement, provided probable cause for the search warrant.[30]

As argued by Defendant, there is little information included in the Affidavit to support the confidential informant's veracity. However, as argued by the government, some of the confidential informant's statements were corroborated by independent sources, including that Defendant was driving a gold Cadillac Deville and that he was acting recklessly. Regarding reliability, Detective Telles describes the confidential informant only generally as a "long time,

---

[29] Docket No. 58, at 6 (quoting Docket No. 56, Exhibit A, at 3).

[30] *Id.* at 7.

trusted and reliable" source.[31] This provides some evidence of reliability, but the value is limited considering the lack of specifics. Finally, the Affidavit fails to include any information regarding the informant's basis of knowledge, and the details provided by the informant are not so specific as to suggest that the information provided was based on first-hand knowledge.

Taken as a whole, while the informant's statements provide some support for a probable cause determination, they would likely be insufficient to support the warrant standing alone. However, the Affidavit provided additional information in support of probable cause, including information supporting that Defendant had fled from police officers on numerous occasions, that he was observed fleeing from officers after dropping a bag inside of a residence, and that he has a criminal history that includes gang involvement and a gun charge.[32]

Ultimately, the Court need not determine if the information contained in the Affidavit provided probable cause to search the apartment. As discussed below, the Court finds that regardless of whether the Affidavit included sufficient information to support a probable cause finding, "there is enough in the [A]ffidavit to cause [the Court] to readily conclude that the officers who executed the warrant . . . acted in good faith."[33]

---

[31] Docket No. 56, Exhibit A, at 2.

[32] *See United States v. Artez*, 389 F.3d 1106, 1114–15 (10th Cir. 2004) (holding "criminal history, combined with other factors, can support a finding of reasonable suspicion or probable cause" and considering in its probable cause determination that "individuals who either lived at or frequented the suspect residence had prior convictions for narcotics-related offenses . . . [and] that one of the residents had an active arrest warrant for possession of drug paraphernalia" which was corroborated by a "confidential informant's tip that [the defendant's] residence was being used to distribute methamphetamine and that drugs or related contraband was likely to be found at that location.").

[33] *Quezada-Enriquez*, 567 F.3d at 1234; *see also Danhauer*, 229 F.3d at 1005 ("In reviewing suppression motions, courts have the discretion to proceed directly to an analysis of the good-faith exception without first addressing the underlying Fourth Amendment question.").

In *United States v. Leon*,[34] the Supreme Court found that evidence of a crime should not be excluded if the retrieving officer acted in good faith because "where an officer's conduct is objectively reasonable, excluding the evidence will not further the ends of the exclusion rule in any appreciable way."[35] The Tenth Circuit has "concluded that *Leon*'s good faith exception applies only narrowly, and ordinarily only when an officer relies, in an objectively reasonable manner, on a mistake made by someone other than the officer."[36] "[O]fficers are generally not required to second-guess the magistrate's decision in granting a warrant."[37] Therefore, where officers executed a search warrant in retrieving the evidence subject to exclusion, the good faith exception will apply so long as the warrant is not "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable."[38]

The Tenth Circuit found a warrant to be so lacking in probable cause that the good faith exception could not apply in a case where the warrant at issue was based on, among other things, information provided by an informant 21 months before the search took place, and a drug transaction that occurred in front of the home that was different than the home that was searched.[39] The Tenth Circuit reached the same conclusion in a case where the warrant at issue provided only a "physical description of the address," but did not otherwise explain "how the

---

[34] 468 U.S. 897 (1984).

[35] *Id.* at 919–20 (internal quotation marks and citations omitted).

[36] *United States v. Perrine*, 518 F.3d 1196, 1206 (10th Cir. 2008) (quoting *United States v. Cos*, 498 F.3d 1115, 1132 (10th Cir. 2007)).

[37] *United States v. Gonzales*, 399 F.3d 1225, 1228–29 (10th Cir. 2005).

[38] *Leon*, 468 U.S. at 923 (internal quotation marks and citation omitted).

[39] *United States v. Cordova*, 792 F.3d 1220, 1226 (10th Cir. 2015), as corrected (July 31, 2015).

address was linked to [the defendant], the vehicle [involved], the suspected criminal activity, or why the officer thought the items to be seized would be located at the residence."[40]

The Court cannot conclude that the warrant in this case is so lacking. Here, the Affidavit included statements from a confidential informant supporting that Defendant drove a gold Cadillac Deville without a license plate, possessed a firearm, and was using drugs and acting recklessly. Independent sources later confirmed that Defendant drove a gold Cadillac Deville that was sometimes seen without a license plate, and had fled from law enforcement officers numerous times, suggesting criminal culpability. Further, after Detective Telles located Defendant's Cadillac, he placed a GPS monitor on it, which led officers to observe Defendant enter an apartment with a backpack and subsequently flee from the apartment and from law enforcement without the backpack. Finally, Defendant's criminal history that includes a firearms offense and involvement with the Tongan Crip Gang provides additional support.[41]

Considering all of these assertions included in the Affidavit, the Court concludes that even if "the affidavit in support of the warrant did not establish probable cause, it was not so lacking in indicia of probable cause that the executing officer should have known the search was illegal despite the state magistrate's authorization."[42] Because the Court finds that the officers executing the warrant on the apartment acted in good faith, the Court will not exclude any evidence resulting from the search.

---

[40] *Gonzales*, 399 F.3d at 1230.

[41] *Artez*, 389 F.3d at 1114 ("[C]riminal history, combined with other factors, can support a finding of reasonable suspicion or probable cause.").

[42] *Danhauer*, 229 F.3d at 1007.

III.  CONCLUSION

It is therefore

ORDERED that Defendant's Motion to Suppress or, in the Alternative, a Franks Hearing.

(Docket No. 55) is DENIED.

DATED this 2nd day of July, 2025.

BY THE COURT:

Ted Stewart
United States District Judge